**2020 UT App 88**

## THE UTAH COURT OF APPEALS

KAREN HARDY,
Appellee,

*v.*

BRIAN NEIL HARDY,
Appellant.

Opinion
No. 20190496-CA
Filed June 11, 2020

Fifth District Court, St. George Department
The Honorable Michael Leavitt
No. 190500106

Lewis P. Reece and Devon James Herrmann,
Attorneys for Appellant

Benjamin Lusty and Stephanie Lenhart, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and KATE APPLEBY concurred.

CHRISTIANSEN FORSTER, Judge:

¶1      Brian Neil Hardy appeals the district court's entry of a
civil stalking injunction against him. We reverse.

BACKGROUND

¶2    Brian and his former wife, Karen Hardy,[1] had a strained relationship following their divorce. Brian believed that Karen was taking their child to a particular therapist he did not approve of, which would have been a violation of their divorce decree. To confirm his suspicions, he went to the therapist's office at the time when he believed Karen had an appointment scheduled for their child. Brian observed Karen in her vehicle outside the therapist's office and took two photographs to use as evidence.

¶3    Karen saw Brian's car at the therapist's office and filed a request for a civil stalking injunction the same day. The petition alleged a separate stalking incident in addition to the incident at the therapist's office, but the district court determined that the other incident did not amount to stalking. Nevertheless, the court found that by both observing and photographing Karen at the therapist's office, Brian had engaged in a course of conduct that amounted to stalking. The court found that "the addition of the photographing is a separate act, over and above observing," because "the purpose for photographing is different than . . . the purpose for observing or monitoring something." Additionally, the court found that the actions were directed at Karen and that Brian knew or should have known that they would cause her emotional distress. Accordingly, the court granted the civil stalking injunction. Brian now appeals.

ISSUE AND STANDARD OF REVIEW

¶4    Brian raises only one issue on appeal. He asserts that the district court erred in determining that observing and

_____

1. As is our practice in cases where both parties share a last name, we refer to the parties by their first names with no disrespect intended by the apparent informality.

photographing Karen on the day in question could be considered a "course of conduct" under the Utah Code. Whether someone has engaged in a course of conduct under the stalking statute is a question of law, which we review for correctness. *Judd v. Irvine*, 2015 UT App 238, ¶ 8, 360 P.3d 793 (per curiam).

## ANALYSIS

¶5   Utah Code section 77-3a-101 allows for the entry of a civil stalking injunction upon a district court finding that "an offense of stalking has occurred." Utah Code Ann. § 77-3a-101(5)(a) (LexisNexis 2017). Under Utah law, stalking occurs when a person

> intentionally or knowingly engages in a course of conduct directed at a specific person and knows or should know that the course of conduct would cause a reasonable person:
>
> (a) to fear for the person's own safety or the safety of a third person; or
>
> (b) to suffer other emotional distress.

*Id.* § 76-5-106.5(2) (Supp. 2019). A "course of conduct" is defined as "two or more acts directed at or toward a specific person" and can include, among other things, "acts in which the actor follows, monitors, observes, photographs, surveils, [or] threatens . . . a person." *Id.* § 76-5-106.5(1)(b)(i).

¶6   We agree with Brian that observing and photographing Karen at the same time and for the same purpose was not sufficient to establish a course of conduct under the stalking statute. Observing someone is generally inherent in the act of photographing them, especially in the context of the stalking statute where the photography must be knowing and directed

toward a specific person.[2] *See id.* § 76-5-106.5(2). If we were to classify observing and photographing as separate acts in this context, it would mean that in virtually all circumstances where the other elements of the statute are met, the act of photographing would necessarily establish a course of conduct. We do not believe this is consistent with the statute's stated intent that a course of conduct be composed of "two or more acts." *See id.* § 76-5-106.5(1)(b). Further, it is inconsistent with the nature of stalking, which is inherently "an offense of repetition."[3] *See Ellison v. Stam*, 2006 UT App 150, ¶ 28, 136 P.3d 1242.

¶7    We also consider the purpose of the conduct to be relevant in assessing whether two separate acts have occurred. The district court observed that "the purpose for photographing is different than . . . the purpose for observing or monitoring something." But nothing in the facts of this case supports a finding that the observing and photographing served different

---

2. Karen asserts that people can be photographed "randomly, in an impromptu fashion, or coincidentally," as well as "remotely" or automatically by surveillance cameras. But such situations would be highly unlikely to fall within the stalking statute in the first place, as it would be difficult to demonstrate that the act of photographing someone was either knowing or directed at the person if it was accomplished without observation.

3. Karen correctly points out that in 2008, the Utah Legislature modified the definition of "course of conduct" in the stalking statute by removing the reference to "repeatedly" and changing the course-of-conduct requirement from "two or more occasions" to "two or more acts." *See* Act of March 18, 2008, ch. 356, § 2, 2008 Utah Laws 2290, 2292. But we do not believe these changes are as significant as Karen argues. "Stalking, *by its very nature*, is an offense of repetition," and "conduct is rendered . . . more threatening because it is repeated." *Ellison v. Stam*, 2006 UT App 150, ¶ 28, 136 P.3d 1242 (emphasis added).

purposes. Rather, they were part of a single act intended to expose Karen for allegedly violating the parties' divorce decree by taking their child to a therapist unapproved by Brian.[4]

¶8 We also do not assign the same significance to the listing of possible acts of stalking included in the statute that Karen does. Just because observing and photographing are listed separately in the statute does not mean that they are distinct acts when they occur simultaneously and where one is inherent in the other. Indeed, many of the examples of stalking listed in the statute may overlap. For example, monitoring ("to watch, observe, or check"), observing ("to take notice [or] be attentive"), and surveilling (to keep "close watch . . . over one or more persons") are essentially synonyms in most cases. *See Monitor*, Webster's Third New Int'l Dictionary (1986); *id. Observance*; *id. Surveillance*. And following, like photographing, cannot be accomplished without some degree of monitoring, observing, or surveilling. Thus, the fact that a single action may be described by more than one named example in the statutory list does not mean multiple acts of stalking have occurred. Rather, the alleged actions must be distinct in time or purpose. In this case, the photographing and observing together were a single "act" and cannot constitute a course of conduct.

---

4. We could conceive of a circumstance in which a single event with multiple distinct acts undertaken for different purposes or separated by some amount of time might constitute a course of conduct. For example, if Brian had followed Karen to learn where she was going and then photographed her to prove that she was engaging in inappropriate conduct, the following and photographing/observing might constitute two separate acts. But in this case, nothing indicates that the observation was distinct either in time or purpose from the photographing. The photographing and observing occurred essentially simultaneously and furthered a single purpose of proving that Karen was taking the child to therapy.

## CONCLUSION

¶9 Because the observing and photographing constituted a single act for purposes of the stalking statute, they did not constitute a course of conduct, and the district court therefore erred in granting the stalking injunction. Accordingly, we reverse the district court's decision and vacate the stalking injunction.

———————